## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DIN SHEPP,

     Plaintiff,

v.

CUSTOM CARTAGE, INC.,
JOSHUA DILLISHAW, and
NATIONAL LIABILITY & FIRE
INSURANCE COMPANY,

     Defendants.

Civil Action No.
1:20-cv-02722-VMC

## ORDER AND OPINION

This matter is before the Court on the Motion for Partial Summary Judgment ("Motion" or "Mot.," Doc. 39) filed by Defendants Custom Cartage, Inc. ("Custom"), Joshua Dillishaw, and National Liability & Fire Insurance Company ("NLFI") (collectively, "Defendants"). Plaintiff Din Shipp filed a Response in Opposition to the Motion (Docs. 49, 50). Defendants filed a Reply in Support of the Motion ("Reply," Doc. 51).

Having reviewed these briefs, and all other matters properly of record in this case, the Court will grant the Motion in part and deny the Motion in part.

## BACKGROUND

Defendant Joshua Dillishaw is an Oklahoma resident and employee of Defendant Custom, an Oklahoma company. (Defs.' Statement of Undisputed

Material Facts ("SUMF") ¶ 2, Doc. 39-2; Pl.'s Resp. to SOMF ("RSUMF") ¶ 2, Doc. 49-6). Plaintiff Din Shepp is a Georgia resident. (Compl. ¶ 1).

Mr. Shepp filed this trucking collision case in the State Court of Fulton County on May 19, 2020. (Compl., Doc. 1-2). Defendants removed the case to this Court on June 29, 2020. (Not. of Removal, Doc. 1). On November 29, 2021, Defendants filed the present Motion and a Motion to Exclude Certain Treating Physicians' Purported Expert Testimony ("Motion to Exclude," Doc. 43). The Court granted the Motion to Exclude. (Ord. of Feb. 7, 2022, Doc. 54). The following facts are not disputed by the parties unless otherwise indicated.

## I.    The Accident

On December 18, 2018, around approximately 6:40 p.m., Mr. Shepp was traveling southbound on Interstate 75/85 in Fulton County, Georgia. (SUMF ¶ 1; RSUMF ¶ 1). Mr. Dillishaw, in the scope of his employment with Custom, was heading to Jacksonville, Florida in a tractor trailer to drop off a load. (SUMF ¶¶ 2, 3; RSUMF ¶¶ 2, 3). While traveling southbound on Interstate 75/85 in Fulton County, Georgia, Mr. Dillishaw struck Mr. Shepp from behind. (*Id.*). The incident was captured on video by Mr. Dillishaw's dash camera. (SUMF ¶ 4; RSUMF ¶ 4).[1]

---

[1] The Court has reviewed the video footage. In the Court's estimation, Mr. Shepp is about two car-lengths ahead of Mr. Dillishaw. It appears that between 23:30:21 and 23:30:30, Mr. Shepp travels about 9 car lengths, which would work out to about 11 miles per hour based on an average car length of 14.7 feet. Mr. Dillishaw estimated the speed at about 15 to 30 miles per hour. (Dillishaw Dep. at 123:13–

Both Mr. Shepp and Mr. Dillishaw were traveling below the posted speed limit on the highway due to traffic conditions. (SUMF ¶ 5; RSUMF ¶ 5).

The parties agree that Mr. Dillishaw did not receive a citation related to the subject collision, but as Mr. Shepp points out, Mr. Dillishaw was issued a warning for following too closely. (SUMF ¶ 6; RSUMF ¶ 6; Deposition of Joshua Dillishaw dated March 5, 2021 ("Dillishaw Dep.") at 132:18–133:6, Doc. 49-5; Rule 30(b)(6) Deposition of Custom Cartage, Inc. through Janet Norman ("Norman Dep.") at 36:4-23, Doc. 49-4).

As detailed further below, Mr. Shepp claims permanent personal injuries and damages primarily to his lower back as a result of the collision that purportedly require future surgery costing approximately $191,406.50. (SUMF ¶ 7; RSUMF ¶ 7).

## II.   Mr. Shepp's Claimed Injuries

Mr. Shepp underwent a lumbar MRI at AICA Orthopedics on December 28, 2018, ten days after the accident, which revealed degenerative spondylosis and narrowing at L4-5 along with a right paracentral disc herniation and bone spur (SUMF ¶ 15; RSUMF ¶ 15). As Mr. Shepp points out, the MRI also indicated a

---

14). At about 23:30:30, Mr. Shepp applies his brakes and at 23:30:31 he activates his turn signal and subsequently comes to a near stop. He is rear ended about three seconds later, at 23:30:34. This "back of the napkin" analysis is provided only for background and does not constitute any findings of fact or judicial notice and played no role in the Court's determination.

"central and right paracentral herniated disc protrusion with annular tear indenting the thecal sac to the right of midline and touching the right S1 nerve root." (Def.'s Mot. Ex. 7, Doc. 39-1 at 307). The lumbar MRI also revealed moderate-to-severe degenerative spondylosis and narrowing along with a central disc bulge and bone spur across the midline at L5-S1. (SUMF ¶ 16; RSUMF ¶ 16).

Prior to March 22, 2019, Mr. Shepp did not treat with any orthopedic physician that rendered an opinion that the subject collision caused his lower back pain complaints. (SUMF ¶ 17; RSUMF ¶ 17). On February 21, 2020, Mr. Shepp obtained a surgical consultation with Dr. Brad Prybis regarding his lower back pain. (SUMF ¶ 18; RSUMF ¶ 18). On February 21, 2020, Dr. Prybis reviewed Mr. Shepp's radiograph results "which showed severe degeneration from L4 to S1 with moderate canal more severe right-sided foraminal stenosis." (SUMF ¶ 19; RSUMF ¶ 19).

Based on his reading of Mr. Shepp's diagnostics (and, as Mr. Shepp points out, after a "long discussion" about the nature of Mr. Shepp's condition and the treatment options prior to recommending surgery), Dr. Prybis recommended that Mr. Shepp undergo a two-level fusion surgery from L4 to S1 (SUMF ¶ 20; RSUMF ¶ 20; Def.'s Mot. Ex. 7, Doc. 39-1 at 303–04). Nowhere in Dr. Prybis' office record did he opine that the subject collision caused Mr. Shepp to require the recommended surgery. (SUMF ¶ 21; RSUMF ¶ 21).

The record reflects that Dr. Prybis has not testified in this matter as of the close of discovery on November 1, 2021, and thus, has rendered no causation opinions in this matter. (SUMF ¶ 22; RSUMF ¶ 22). As noted above, the Court has entered an Order precluding Dr. Prybis from offering expert testimony in this matter. (Doc. 54).

### III.   Custom's Hiring and Training of Mr. Dillishaw

At the time of Mr. Dillishaw's hiring, Custom examined his employment application to determine whether he had sufficient driving experience. (SUMF ¶ 8; RSUMF ¶ 8). Custom contacted his prior employers regarding his driving qualifications. (SUMF ¶ 9; RSUMF ¶ 9).[2]

Custom Cartage, Inc. conducted an in-person interview of Mr. Dillishaw (SUMF ¶ 11; RSUMF ¶ 11). Custom also had him undergo a pre-employment drug screening, which was clean. (SUMF ¶ 12; RSUMF ¶ 12).

Custom reviewed Mr. Dillishaw's driving history report to identify prior citations and collisions. (SUMF ¶ 10; RSUMF ¶ 10). The parties agree that Mr. Dillishaw had not been involved in a motor vehicle collision in a commercial

---

[2] Mr. Shepp points out in his Response to Plaintiff's Statement of Material Facts ¶ 9 that "Defendant Custom Cartage only made contact with one prior employer." However, this response does not include "specific citations to evidence (including page or paragraph number)." LR 56.1(B)(2)(a)(2), NDGa. It does appear that at least one prior employer, Mid Ark Utilities was "out of business" and Custom "[could not] get in touch with anyone" there. (Def.'s Mot. Ex. 5, Doc. 39-1).

vehicle in the manner and type that is the subject of this litigation prior to his hiring by Custom as well as prior to the subject collision. (SUMF ¶ 14; RSUMF ¶ 14). In the section of his application relating to traffic convictions in the last 3 years, Mr. Dillishaw self-reported a prior citation received in Virginia for a "left lane" violation, a prior citation received in California for a "stop sign" violation, and a license suspension for failing to timely pay a prior citation in 2007. (Defs.' Mot. Ex. 5, Doc. 39-1 at 56.) The HireRight 3-year MVR traffic history report obtained by Custom revealed a December 16, 2016 citation for "failure to obey traffic control sign or device." (*Id.*, Doc. 39-1 at 75).[3] Mr. Dillishaw also testified that he had been in a prior collision in California caused by another driver's failure to yield and had his trailer slide into a ditch sometime in 2016 or 2017 after parking on the side of the roadway for the night. (Dillishaw Dep. at 55:9–25, 56:1–15, 60:2–16.) In July 2018, after Custom hired Mr. Dillishaw, he received a citation for speeding. (Dillishaw Dep. at 246:24–247:23; Norman Dep. at 95:1-7).

Defendants assert that at the time of Mr. Dillishaw's hiring, Custom had him watch and review several training videos prior to his driving a company vehicle, but Mr. Shepp correctly points out that the materials cited by Defendants do not appear to support this assertion. (SUMF ¶ 13 (citing Defs.' Mot. Ex. 5 at 1-21; Norman Dep. at 17:4–14, 20–21, 64:10–22, 65:22–25), *disputed* RSUMF ¶ 13; *see also*

---

[3] It is unclear if this is the same "stop sign" citation disclosed by Mr. Dillishaw.

Dillishaw Dep. at 67:20–24 ("Q: Have you ever had any safety-related training or testing while working at Custom Cartage, Inc., in your first stint with Custom Cartage from April of 2018 until 2019? A: Not that I recall."); Norman Dep. at 64:10–19 ("Q: Okay. Now, tell me what it is that you're required to do to make sure you have safe drivers on the roadway. Before you put somebody behind the wheel of a commercial vehicle, what do you need to do to qualify? A. We need to look at their MVRs. We need to do a preemployment drug test. We need to have a formal interview with the driver. And then we need to do previous employment check. Q. Anything else? A. Not that I recall. Those are the main issues.")).[4]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

---

[4] A post-accident entry in Mr. Dillishaw's file indicates that he watched two videos on December 28, 2018: Defensive Driving for CMV Drivers and Night Driving. (Defs.' Mot. Ex. 5, Doc. 39-1 at 97).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The moving party's burden is discharged merely by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex*, 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All reasonable doubts should be resolved in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). In addition, the court must "avoid weighing conflicting evidence or making credibility determinations." *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine dispute for trial. *Fitzpatrick*, 2 F.3d at 1115 (citations omitted).

## DISCUSSION

Mr. Shepp's Complaint raises six counts: (1) "Negligence of Defendant Dillishaw," (2) "Imputed Liability," (3) "Negligent Hiring, Training & Supervision," (4) "Direct Action [Against NLFI]," (5) "Damages [including past and future medical expenses and past and future lost wages]," and (6) "Punitive Damages." (Compl., Doc. 1-2).

Defendants make three primary arguments in support of partial summary judgment: (1) the negligent hiring and retention claims lack sufficient evidentiary support to survive summary judgment, (2) expert evidence is required to show causation as to Mr. Shepp's future medical expenses, and (3) punitive damages are not warranted against Defendants Dillishaw and NLFI. The Court addresses each argument in turn.

## I.    Negligent Hiring and Retention

Employers operating in Georgia are "bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency." O.C.G.A. § 34-7-20.[5] "Generally, the determination of whether an employer used ordinary care in hiring an employee is a jury issue." *Tecumseh Prod. Co. v. Rigdon*,

---

[5] Despite the fact that Mr. Dillishaw was hired in Oklahoma, the parties agree that Georgia's substantive tort law applies in this diversity action because the accident occurred in Georgia. *Coleman v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 4116929 at *3 (M.D. Ga. 2020) (citing *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1326 (11th Cir. 2015)).

552 S.E.2d 910, 912 (Ga. Ct. App. 2001) (citing *Sparlin Chiropractic Clinic v. TOPS Personnel Svcs.*, 387 S.E.2d 411 (Ga. Ct. App. 1989)). However, "[u]nder Georgia law, liability for negligent hiring or retention requires evidence that the employer knew or should have known of the employee's propensity to engage in the type of conduct that caused the plaintiff's injury." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1247 (11th Cir. 2001) (citing *Alpharetta First United Methodist Church v. Stewart*, 472 S.E.2d 532 (Ga. Ct. App. 1996)). Thus, "[i]n order to defeat summary judgment on this issue, a plaintiff must produce some evidence of incidents similar to the behavior that was the cause of the injury at issue." *Remediation Res., Inc. v. Balding*, 635 S.E.2d 332, 335 (Ga. Ct. App. 2006) (citing *Heard v. Mitchell's Formal Wear*, 549 S.E.2d 149 (Ga. Ct. App. 2001)).

Defendants assert that Mr. Dillishaw's driving history does not show a propensity to cause collisions, arguing that "Joshua Dillishaw has *never* been involved in a collision with another vehicle while operating a commercial vehicle where he was the at-fault party, including this collision." (Def.'s Br. Supp. Mot. at 17, Doc. 39-1).

In response, as to negligent hiring, Mr. Shepp points out that Custom was aware of his two traffic offenses within the three years before he was hired. Moreover, Mr. Shepp notes that one of the offenses, failure to obey a traffic control sign or device, was directly relevant to this case, because Mr. Dillishaw

disregarded a traffic sign that would have routed his truck to a different highway. (Pl.'s Resp. to Mot. at 6–7, Doc. 50-1).

As to retention and supervision, Mr. Shepp notes that with only three months on the job, Mr. Dillishaw received a speeding citation. (Pl.'s Resp. to Mot. at 6–7, Doc. 50-1). Mr. Shepp argues that if Custom followed its own policies, it would have suspended Mr. Dillishaw after receiving the speeding citation. Defendants respond that these policies are guidelines, and not mandatory. (Defs.' Reply at 8, Doc. 51).

The Court turns first to the allegation of negligent hiring. As Judge Wood has observed, "Georgia courts have undoubtedly previously found a single driving violation sufficient to create a jury question as to negligent hiring." *Tuk v. U.S. Xpress, Inc.*, No. 2:19-CV-134, 2021 U.S. Dist. LEXIS 129389, at *15 (S.D. Ga. July 12, 2021) (citing *W. Indus., Inc. v. Poole*, 634 S.E.2d 118, 121–22 (Ga. Ct. App. 2006), *Cherry v. Kelly Servs.*, Inc., 319 S.E.2d 463, 464 (Ga. Ct. App. 1984), and *Karr v. Celadon Trucking Servs., Inc.*, No. 1:16-CV-02587-LMM, 2017 U.S. Dist. LEXIS 224326, 2017 WL 11084520, at *5 (N.D. Ga. Nov. 3, 2017)).

Custom attempts to distinguish cases which found jury questions as to negligent hiring by arguing that it conducted a reasonable pre-employment screening. (Defs.' Reply at 7, Doc. 51). But just because Custom "followed its own procedures and federal regulations . . . do[es] not mandate the conclusion that

[Custom] was not negligent in its hiring of [Dillishaw]." *Tuk*, No. 2:19-CV-134, 2021 U.S. Dist. LEXIS 129389, at *16. And the Court cannot determine the reasonableness of Custom's screening practices on summary judgment. *Rigdon*, 552 S.E.2d at 912 (citing *Sparlin Chiropractic Clinic*, 387 S.E.2d at 411) (holding determination of whether an employer used ordinary care in hiring an employee is a jury issue). The Court's inquiry is solely whether Mr. Shepp has shown evidence of incidents similar to proximate cause of his injuries. *Balding*, 635 S.E.2d at 335. Mr. Shepp points that Mr. Dillishaw's prior citation for failing to obey a traffic control sign or device relates to Mr. Shepp's allegation that Mr. Dillishaw disregarded a sign prohibiting Mr. Dillishaw from driving his truck on I-75/85 in this case. Whether or not this is enough to carry the day is the jury's call.

Likewise, Mr. Shepp has presented a jury question on whether Custom was negligent in retaining and supervising Mr. Dillishaw after he was cited for speeding within three months of being hired, where Custom's own internal policies provide for suspension under such circumstances. "Courts have denied summary judgment to defendant employers in cases where the employers 'breach [their] own reasonable procedures . . . .'" *Tuk*, No. 2:19-CV-134, 2021 U.S. Dist. LEXIS 129389, at *14-15 (citing *v. Poole*, 634 S.E.2d at 122). The fact that Custom's policies were stricter than what was required by federal law or that Custom considers the policies to be non-binding guidelines only bears on the

reasonableness of the policies, and by extension, the reasonableness of Custom's actions leading up to the accident. These are jury questions.

## II. Causation

Defendants next seek partial summary judgment on the grounds that Mr. Shepp has failed to provide expert evidence that his alleged need for future surgery was caused by the accident. Under Georgia law, "[t]he general rule is that there is 'no requirement that expert testimony must be produced by a plaintiff to a negligence action in order to prevail at trial.'" *Nixon v. Pierce Cnty. Sch. Dist.*, 746 S.E.2d 225, 227 (Ga. Ct. App. 2013) (quoting *Self v. Exec. Comm. of the Ga. Baptist Convention, Inc.*, 266 S.E.2d 168 (Ga. 1980)). Thus, "[w]here the causal link between the defendant's conduct and the [plainitff's] injury can be determined by a lay jury without expert guidance, no expert evidence need be produced to defeat a defense motion for summary judgment. *Cowart v. Widener*, 697 S.E.2d 779, 785 (Ga. 2010).

However, "even in simple negligence cases, plaintiffs must come forward with expert evidence to survive a defense motion for summary judgment, where "medical questions" relating to causation are involved." *Id.* at 784. "In this context, the term 'medical question' has been used to describe situations where the existence of a causal link between the defendant's conduct and the plaintiff's injury cannot be determined from common knowledge and experience and

instead requires the assistance of experts with specialized medical knowledge." *Id.* (citations omitted).

Defendants assert this case presents medical questions because "Plaintiff had ceased treatment for over seven months, with no knowledge of what aggravating factors could have caused or contributed to his purported condition during that time period, as well as receiving this recommended course of treatment 15 months after the subject collision." (Defs.' Br. Supp. Mot. at 27, Doc. 39-1). Defendants also point to the possibility of a "pre-existing degenerative condition" as a confounding variable necessitating clarifying expert testimony. (Reply at 13, Doc. 51). If Defendants are correct, a requirement of expert evidence is dispositive of this issue because of the Court's aforementioned Order granting the Motion to Exclude. (Doc. 54).

The parties agree that Mr. Shepp underwent a lumbar MRI with Dr. Thomas Turek at AICA Orthopedics on December 28, 2018, ten days after the accident, and that Mr. Shepp later obtained a surgical consultation with Dr. Brad Prybis on February 21, 2020, who reviewed Mr. Shepp's radiograph. (SUMF ¶¶ 15, 19; RSUMF ¶¶ 15, 19). In his February 2020 report recommending the surgery, Dr. Prybis identified "severe degeneration from L4 to S1 with moderate canal more severe right-sided foraminal stenosis." (Defs.' Br. Supp. Mot. Ex. 7, Doc. 39-1 at 304). Dr. Turek's 2018 report similarly identifies moderate foraminal bony (but no

central canal) stenois in L4 to L5 and L5 to S1. (*Id.*, Doc. 39-1 at 307; *cf. also* Reply at 13, Doc. 51 ("Dr. Prybis similarly stated that Plaintiff's radiographs showed "severe degeneration from L4 to S1 with moderate canal more severe right-sided foraminal stenosis. . . .")).

Mr. Shepp asserts that expert evidence is unnecessary here based on the temporal proximity between the accident and his symptoms, as demonstrated by the December 2018 MRI. "Georgia law allows a jury to infer a causal connection between an accident and a plaintiff's injuries based on the sequence of events, particularly in the case of automobile collisions." *Cooper v. Marten Transp., Ltd.*, 539 F. App'x 963, 968 (11th Cir. 2013) (citing *Hutcheson v. Daniels*, 481 S.E.2d 567, 569 (Ga. Ct. App. 1997); *Jordan v. Smoot*, 380 S.E.2d 714, 714–15 (Ga. Ct. App. 1989); *Cowart*, 697 S.E.2d at 791).

The Georgia Court of Appeals' decision in *Smoot* is on point. 380 S.E.2d at 714. In that case, the plaintiff was involved in a March 12, 1987 car accident. *Id.* The "[plaintiff's] case consisted of her testimony and that of the responding police officer, pictures of her damaged car, and her medical bill." *Id.* The plaintiff testified that

> she was involved in a collision with [the defendant]; that later that same day she experienced pain and visited a chiropractor; that she continued to have pain from the back of her head through her neck and shoulders; that the chiropractic treatments gave her relief; that she stopped seeing the chiropractor four months after the

> collision; and that she had suffered from some backaches
> prior to the collision but had not been under medical
> care.

*Id.* The plaintiff "identified the medical bills for her chiropractic treatment from

March 12 through July 20, 1987, totaling $2,245" and "then rested."

The trial court directed a verdict on the grounds that plaintiff had not

introduced medical evidence to establish causation, but the Georgia Court of

Appeals reversed. *Id.* That court explained that

> [a] causal connection, requiring expert medical
> testimony, must be established where the "potential
> continuance of a disease" is at issue. However, where, as
> here, there is no significant lapse of time between the
> injury sustained and the onset of the physical condition
> for which the injured party seeks compensation, and the
> injury sustained is a matter which jurors must be
> credited with knowing by reason of common knowledge,
> expert medical testimony is not required in order for a
> plaintiff to establish a personal injury case sufficient to
> withstand a defendant's motion for directed verdict.

*Id.* at 715 (citations omitted). Thus, even despite the fact that the plaintiff had

"suffered from some backaches prior to the collision but had not been under

medical care," the court found her testimony regarding her symptoms to be

sufficient to submit the causation issue to the jury.

Also of great utility is the Eleventh Circuit's unpublished opinion in *Cooper*

*v. Marten Transportation, Ltd.*, 539 F. App'x 963, 967 (11th Cir. 2013). In *Cooper*, a

truck driver rear-ended a couple on April 21, 2010. *Cooper v. Marten Transp., Ltd,*

16

No. 1:10-CV-03044-JOF, 2013 WL 11902777, at *1 (N.D. Ga. Feb. 12, 2013), *rev'd and remanded,* 539 F. App'x 963 (11th Cir. 2013). Prior to the accident, the couple had a history of back problems. *Id*. The day after the accident, the couple "sought treatment at the Piedmont Hospital Emergency Room for back, shoulder, and neck pain." *Id.* "In the following months, [the couple] received treatment from several different physicians" . . . but "after undergoing unsuccessful treatment and therapy, [they] underwent surgical procedures on their lower backs and incurred significant medical expenses." *Id.* Like in this case, the district court had previously excluded the couple's treating physicians from rendering expert opinions. *Id.* Based on the absence of expert evidence of causation, the district court granted summary judgment. *Id.* at *2.

On appeal, the Eleventh Circuit affirmed the exclusion of expert testimony, but reversed the grant of summary judgment. *Cooper*, 539 F. App'x at 969. The court, applying Georgia law, explained that "[w]hether the Coopers suffered new or aggravated back problems shortly after a low-speed collision with a tractor trailer is the type of question a lay jury could decide based on common knowledge" and "evidence that the [couples'] injuries may have been the result of preexisting conditions or the 2009 collision" merely "created a dispute of material fact that the district court was not authorized to resolve at the summary judgment stage." *Id.* at 968.

17

Like the couple in *Cooper*, Mr. Shepp presented himself for evaluation promptly after the accident. (Def.'s Mot. Ex. 5, Doc. 39-1 at 307). Similarly to the couple in that case, Mr. Shepp underwent a number of treatments over a period of time which he alleges did not ultimately resolve the issue. (Defs.' Ex. 7, Doc. 39-1 at 304 ("[Mr. Shepp] has exhausting nonoperative treatment"). Ultimately, as in that case, the treatment did not adequately resolve the issue in question, and a treating physician prescribed surgery. (*Id.*) Even where the surgery in question was not called for in the initial evaluation but only after the passage of time and exhaustion of other options, the Eleventh Circuit did not require the couple in *Cooper* to produce expert testimony as to causation. 539 F. App'x at 968.[6]

Lastly, Defendants assert that "[t]here is no doubt that a determination of whether Plaintiff requires a future two-level fusion surgery in his lumbar spine is a 'medical question' requiring 'specialized medical knowledge' outside the common understanding and experience of a lay person." (Br. Supp. Mot. at 27, Doc. 39-1). But the question of whether Mr. Shepp requires a surgery based on the condition of his spine is a discrete question from whether the need for that surgery

---

[6] Mr. Shepp should note that the Coopers eventually proceeded to trial with "only the hope that the jury would infer a causal connection between [the] accident and [the Plaintiffs'] injuries based on the sequence of events," but ultimately lost before a jury. *Cooper v. Marten Transp., Ltd.*, No. 1:10-CV-3044-AT, 2014 WL 11517831, at *1–2 (N.D. Ga. July 30, 2014), *aff'd*, 599 F. App'x 930 (11th Cir. 2015) (internal quotations omitted) (alterations in original).

was caused by Defendants. Mr. Shepp's treating physicians are "allowed to testify as lay treating physicians pursuant to Fed. R. Evid. 701." *Cooper v. Marten Transp., Ltd.*, No. 1:10-CV-3044-AT, 2014 WL 11517830, at *2 (N.D. Ga. May 23, 2014). This lay testimony is limited to "observations based on personal knowledge, including treatment of the party." *Id.* (*Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1316 (11th Cir. 2011)). A treating physician "can testify as to the treatment he or she provided, as well as observations that are 'helpful to a clear understanding of his or her decision making process.'" *Id.* (quoting *U.S. v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) and citing Fed. R. Civ. Evid. 701(b)). Dr. Prybis may testify about his diagnosis and why he recommended the surgery, so long as he does not speculate about the cause of the injuries.[7]

---

[7] Defendants opine that the "Plaintiff's lumbar MRI obtained after the collision on December 28, 2018 [which] revealed degenerative spondylosis and narrowing at L4-5 along with a right paracentral disc herniation and bone spur . . . suggests a pre-existing degenerative lumbar condition." (Reply at 12–13, Doc. 51). "Defendant[s are] free to present its alternative theory of causation to the jury, but the Plaintiff need not present expert medical testimony to support [his] own theory of causation." *Wilson v. Kroger Co.*, No. 1:18-CV-1417-TWT, 2019 WL 2211443, at *5 (N.D. Ga. May 22, 2019). Defendants also point to Mr. Shepp's testimony indicating a hesitancy about obtaining surgery. (Defs.' Br. Supp. Mot. at 11, Doc. 39 (citing Deposition of Din Shepp dated February 4, 2021 at 123:5–24, 132:16–25, 133:1–10)). This equivocal testimony presents a question of fact regarding damages which cannot be resolved on summary judgment.

III.    **Punitive Damages**

Defendants move for summary judgment as to punitive damages against Defendants Dillishaw and NLFI. (Defs.' Br. Supp. Mot. at 18–23, 23 n.7, Doc. 39-1). In response, Mr. Shepp asserts that there is sufficient evidence to support punitive damages against *Custom*, but Custom was not the subject of the Defendants' Motion. (Pl.'s Resp. at 9–11, Doc. 50-1) For the first time in their Reply, Defendants, perhaps in response to Mr. Shepp's arguments, assert that Mr. Shepp lacks sufficient evidence to support an award of punitive damages against Custom. (Defs.' Reply at 9–11).

Essentially, the parties are arguing past each other, leaving the Court to frame the issues. But "[t]here is no burden upon [this Court] to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citing *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990)). "Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Id.* (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994)).

Even if Mr. Shepp had not abandoned his claims for punitive damages against Defendants Dillishaw and NLFI, the Court would grant Defendants'

Motion as to these parties. "In automobile collision cases decided under OCGA § 51–12–5.1, punitive damages are not recoverable where the driver at fault simply violated a rule of the road." *Carter v. Spells*, 494 S.E.2d 279, 281 (Ga. Ct. App. 1997) (citing *Bradford v. Xerox Corp.*, 453 S.E.2d 98 (Ga. Ct. App. 1994)); *Coker v. Culter*, 431 S.E.2d 443 (Ga. Ct. App. 1993). As to Defendant Dillishaw, Mr. Shepp had a burden to offer evidence of aggravating circumstances.  Mr. Shepp points to Mr. Dillishaw's prior and subsequent driving history, but "[t]he aggravating circumstance must relate to the tort being sued on." *McNorrill v. Candler Gen. Hosp., Inc.*, 373 S.E.2d 780, 781 (Ga. Ct. App. 1988) (quoting *C & S Nat. Bank v. Bougas*, 265 S.E.2d 562 (Ga. 1980)) (alterations in original). The Court can see how this might be relevant to Mr. Shepp's claim of negligent hiring or retention, but Mr. Shepp does not elucidate how this relates to the claim of ordinary negligence against Mr. Dillishaw. *Cf. Viau v. Fred Dean, Inc.*, 418 S.E.2d 604, 608 (Ga. Ct. App. 1992) (driving under the influence); *J.B. Hunt Transp., Inc. v. Bentley*, 427 S.E.2d 499, 503 (Ga. Ct. App. 1992) ("[N]otwithstanding either a serious mechanical problem or serious physical problem or both" driver "continued on the highway for at least 10 or 20 miles . . . ."); *Smith v. Tommy Roberts Trucking Co.*, 435 S.E.2d 54, 56 (Ga. Ct. App. 1993) ("The plaintiff deposed that the driver of the truck struck his car not just once but twice, and the second time the truck kept pushing him down the road."). This is not to say that a driving history is never relevant to punitive

damages in an ordinary negligence case, but that it was incumbent on Mr. Shepp to make that connection, and he has failed to do so.

As to Defendant NLFI, NFLI was joined as an insurer under a direct action. Defendants have stated that Custom's policy with NFLI does not cover punitive damages. (Defs.' Br. Supp't Mot. at 23 n.7). Mr. Shepp does not appear to contest this. Mr. Shepp does not point to any independent act or omission of NLFI which would create any independent liability for punitive damages. Accordingly, summary judgment against NLFI is appropriate on this issue as well.

Defendants raised their arguments about punitive damages against Custom for the first time in their Reply. The Eleventh Circuit has repeatedly emphasized that arguments raised for the first time in a reply brief are not properly before a reviewing court. *See United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir. 2002) (explaining it need not address issue raised for first time in reply brief); *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (holding issue raised for first time in reply brief is waived); *United States v. Martinez*, 83 F.3d 371, 377 n.6 (11th Cir. 1996) (declining to consider arguments raised for first time in reply brief); *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) (per curiam) (same).

Based on the foregoing authorities, the Court will grant the Motion as to Mr. Shepp's claim for punitive damages against Mr. Dillishaw and NLFI and deny the Motion as to Custom.

## CONCLUSION

Defendants have identified a number of important issues with Mr. Shepp's case, but these issues ultimately go to weight, not admissibility. Mr. Shepp should consider Defendants' arguments regarding the narrowness of Mr. Dillishaw's traffic offense history, the lack of expert evidence on causation, and the purported differences between the contents of the video and Mr. Shepp's account of the accident before proceeding to trial.

For the above reasons, it is

**ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. 39) is **GRANTED IN PART** as to Plaintiff's claims for punitive damages against Defendant Dillishaw and National Liability & Fire Insurance Company and **DENIED IN PART** in all other respects. It is

**FURTHER ORDERED** that this case is referred to the Chief Magistrate Judge Russell G. Vineyard for assignment to the next available Magistrate Judge to conduct a settlement conference. See LR 16.7(B)(1), NDGa.

In the event that mediation is unsuccessful, the parties are **DIRECTED** to submit a Consolidated Pretrial Order no later than 28 days after the termination of the reference to the settlement judge.

**SO ORDERED** this 25th day of May, 2022.

Victoria Marie Calvert
United States District Judge